AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 202-704-0791, AT&T | ) ) ) ) ) ) ) Case No. 20-SC-10 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

records and information associated with the cellular telephone assigned call number 202-704-0791 ("the Account"), that are stored at premises controlled by AT&T ("the Provider"), headquartered in Dallas, Texas. (See Attachment A)

located in the ___Northern___ District of ___Texas___, there is now concealed *(identify the person or describe the property to be seized)*:

violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), and 18 U.S.C. § 401 (Contempt) (see Attachment B)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343, § 1344 | Wire Fraud; Bank Fraud |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |
| 18 U.S.C. § 401 | Contempt |

The application is based on these facts:
SEE AFFIDAVIT

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joshua W. Huckel, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___TELEPHONE___ *(specify reliable electronic means)*.

Date: ___01/06/2020___

*Judge's signature*

City and state: Washington, D.C.

Deborah A. Robinson, U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means     ☐ Original     ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 202-704-0791, AT&T | Case No. 20-SC-10 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the   Northern   District of   Texas
*(identify the person or describe the property to be searched and give its location)*:

records and information associated with the cellular telephone assigned call number 202-704-0791 ("the Account"), that are stored at premises controlled by AT&T ("the Provider"), headquartered in Dallas, Texas. (See Attachment A)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), and 18 U.S.C. § 401 (Contempt)  (see Attachment B)

**YOU ARE COMMANDED** to execute this warrant on or before   January 20, 2020   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Deborah A. Robinson   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   01/06/2020
                                                                                                                *Judge's signature*

City and state:   Washington, D.C.                         Deborah A. Robinson, U.S. Magistrate Judge
                                                                                        *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>20-SC-10 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
|   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____<br><br>                         _____<br>                          *Executing officer's signature*<br><br>                         _____<br>                           *Printed name and title* |

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 202-704-0791 ("the Account"), that are stored at premises controlled by AT&T ("the Provider"), headquartered in Dallas, Texas.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period March 14, 2019, through October 8, 2019:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), and 18 U.S.C. § 401 (Contempt) involving Deallto Davis during the period from March 14, 2019, through October 8, 2019.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 202-704-0791, THAT IS STORED AT PREMISES CONTROLLED BY AT&T** | **SC No. 20-SC-10**<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Josh Huckel, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 202-704-0791 ("the SUBJECT PHONE"), which is stored at premises controlled by AT&T, a wireless telephone service provider headquartered in Dallas, Texas. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and I have been so employed since February 2010. I am assigned to a white collar crime squad at the FBI's Washington Field Office. During my employment with the FBI, I have conducted and/or assisted in many criminal investigations involving fraud against financial institutions, private businesses, and individuals, including investigations involving wire fraud, conspiracy, money laundering, and

other related federal violations of Title 18 of the United States Code. I have training and experience in the enforcement of the laws of the United States, including the preparation and presentation of affidavits in support of search warrants. I am the FBI's case agent assigned to its investigation of Deallto Davis ("DAVIS").

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other government employees and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft) and 18 U.S.C. § 401 (Contempt) have been committed by DAVIS. There is also probable cause to search the information described in Attachment A for evidence or instrumentalities of these crimes as further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. § 2703(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### Overview

6. On January 28, 2019, DAVIS was charged via criminal complaint with one count of Bank Fraud, in violation of 18 U.S.C. § 1344 (case no. 19-mj-19). On October 29, 2019, a

grand jury returned an Indictment charging DAVIS with nine counts of Bank Fraud and nine counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (case no. 19-cr-364).

7.      The United States is currently investigating DAVIS for committing fraud while on pretrial release in case 19-mj-19.  As detailed below, there is probable cause to believe that DAVIS committed Wire Fraud, Bank Fraud, and Aggravated Identity Theft by purchasing Amtrak tickets using other people's credit cards without their authorization.  The commission of these federal offenses was a violation of his release conditions and constituted Contempt under 18 U.S.C. § 401(3).  There is also probable cause to believe that the SUBJECT PHONE was used to fraudulently purchase Amtrak tickets.

**Release Conditions**

8.      On March 8, 2019, in case 19-mj-19, Chief Judge Howell issued an order setting conditions of release for DAVIS (the Release Order).  One of the conditions of the Release Order was that DAVIS "must not violate federal, state, or local law while on release."  The Release Order also required DAVIS to obtain court approval before traveling outside of the District of Columbia area.  The Release Order advised DAVIS that the penalties and sanctions for violating any of his release conditions included "a prosecution for contempt of court."

9.      Chief Judge Howell ordered DAVIS to be placed into the High Intensity Supervision Program (HISP).  On March 14, 2019, a GPS device was placed on his ankle as part of HISP.

10.     On June 6, 2019, Magistrate Judge Meriweather issued an amended "Order Setting Conditions of Release" (Amended Released Order).  The Amended Release Order also included the condition that Defendant DAVIS "must not violate federal, state, or local law while on release."

**DAVIS' Motion to Travel to Florida**

11.     On June 26, 2019, DAVIS submitted a motion to modify his conditions of release to vacation with his mother, Tonya Davis, in Hollywood, Florida.[1]  The motion further requested the removal of DAVIS' GPS ankle monitor for the duration of his vacation.  According to the motion, DAVIS "and his mother currently have Amtrak tickets scheduling [sic] to leave Union Station at 7:25 p.m. on July 2, 2019 and arriving at the Fort Lauderdale stop on July 3, 2019 at a scheduled arrival time of 7:30 P.M.  Mr. Davis and his mother are scheduled to leave July 6th at 9:00 A.M. arriving in Washington D.C. on July 7th at a scheduled arrival time of 10:00 A.M."  The Court granted the motion.  DAVIS' GPS device was removed on July 1, 2019, and reinstalled on July 9, 2019.

12.     Amtrak records do not reflect any reservations in the names of "Deallto Davis" or "Tonya Davis" for the dates specified in the motion.  Tonya Davis works for the Pretrial Services Agency (PSA).  PSA records indicate that Tonya Davis worked in Washington, D.C., on July 3, 2019, which was the day after she was supposed to travel to Florida via Amtrak with DAVIS.  Based on these facts and other information, the Government filed a motion for an order to show cause as to why DAVIS' release conditions should not be revoked.

13.     In DAVIS' response, he stated that he in fact travelled via Amtrak as represented in his motion. DAVIS attached Amtrak boarding passes in the names of "Dalto Key" and "Suave Christian" for travel from Washington, D.C., to Miami, Florida, on July 2, 2019, and boarding passes in the names "Dalto Key" and "Dujuan Darris" for travel from Miami to Washington, D.C.,

---

[1] The motion was emailed to Judge Meriweather's chambers on June 26, 2019.  It was filed on July 2, 2019, under case number 19-mj-55.  That was the case number assigned to a Rule 5 hearing for DAVIS based on a warrant from the Eastern District of Virginia.

on July 7, 2019.  DAVIS also attached a birth certificate listing his full name as "Deallto Mcquil Key Davis."  DAVIS claimed that "Deallto Key" is his legitimate name.  The response did not explain why DAVIS used the name "Dalto" instead of Deallto, and why Tonya Davis did not travel to Florida as DAVIS had represented in his motion.

### Fraudulent Use of Credit Cards to Purchase Amtrak Tickets

14.     The credit card used to purchase the Amtrak ticket for "Dalto Key" and "Suave Christian" from Washington, D.C., to Miami, Florida, belonged to a Citibank account holder who is not DAVIS, "Dalto Key," "Tonya Davis," or anyone with the last name of "Davis" or "Key."  The account holder is J.C., who resides in Arlington, Texas.

15.     Citibank is a financial institution within the meaning of 18 U.S.C. § 20.  Citibank's deposits are insured by the Federal Deposit Insurance Corporation.

16.     J.C. advised your affiant that his Citibank credit card had been compromised and approximately $4,000 in unauthorized Amtrak charges had been made.  J.C. never gave anyone permission to use the credit card.  J.C.'s credit card statement reflects a $1,375 Amtrak charge and a $1,203 Amtrak charge on July 2, 2019.[2]  The statement for the same credit card also reflects a $234 Amtrak charge and a $1,072 Amtrak charge on July 8, 2019, and a $156 Amtrak charge on

---

[2] Amtrak records indicate that the $1,375 purchase was for tickets in the names of "Dalto Key" and "Suave Christian" for travel from Washington, D.C., to Miami on July 2, 2019.  The $1,203 purchase was for tickets in the names of "Dujuan Darris" and "Bear Remy" for travel from Washington, D.C., to Miami on July 2, 2019.

July 9, 2019.[3]  J.C. stated that he does not know anyone named "Dalto Key," "Dujuan Darris," "James Key," or "Valto Key."[4]

17.     Amtrak records indicate that the email address provided for all of the reservations made with J.C.'s credit card was alisback21@gmail.com.  The phone number provided to Amtrak in connection with the ticket purchased for "James Key" from New York to Washington, D.C., was 202-704-0791, the assigned call number for the SUBJECT PHONE.  All of the tickets purchased with J.C.'s credit card were purchased via telephone through an Amtrak call center.

18.     The credit card used to purchase the Amtrak ticket for "Dalto Key" and "Dujuan Darris" from Miami to Washington, D.C., belongs to a Citibank account holder who is not DAVIS, "Dalto Key," "Tonya Davis," or anyone with the last name of Davis or Key.  The account holder is M.L., who resides in Sacramento, California.  M.L.'s credit card statement reflects a $1,535 charge for Amtrak.  Amtrak records indicate that her credit card was used to purchase tickets for "Dalto Key" and "Dujuan Darris" for travel from Miami to Washington, D.C. on July 7, 2019.  M.L. advised your affiant that Citibank contacted her in July 2019 to advise that her Citibank credit card had been compromised.

19.     Amtrak records indicate that the email address provided for the reservations made with M.L.'s credit card was alisback21@gmail.com.  The phone number provided was 202-704-0791, the assigned call number for the SUBJECT PHONE.  The tickets purchased with M.L.'s credit card were purchased via telephone through an Amtrak call center.

---

[3] Amtrak records indicate that the $234 charge was for a ticket in the name of "Jason Key" for travel from Washington, D.C., to New York, on July 8, 2019.  The $1,072 charge was for tickets in the names of "Dalto Key" and "Ashley Key" for travel from Washington, D.C., to New York, on July 8, 2019, and returning on July 9, 2019.  The $156 charge was for a ticket in the name of "James Key" for travel from New York to Washington, D.C., on July 9, 2019.

[4] J.C.'s credit card statement lists "Valto Key" as a ticket holder for the $1,072 purchase.

6

**The Subject Phone**

20.     I am aware that on March 8, 2019, DAVIS informed PSA that his phone number was 202-704-0791, the assigned call number for the SUBJECT PHONE. I also know that Davis used this phone number to communicate with PSA while on release at least until October 8, 2019.[5]

21.     I have reviewed Amtrak records for the tickets purchased with J.C.'s and M.L.'s credit cards. These records indicate the date and time that the reservations were made through the Amtrak call center. I have also reviewed AT&T toll records for 202-704-0791. The toll records reflect calls to the Amtrak call center that match the date and time that reservations were made for all of the tickets purchased with J.C.'s and M.L.'s credit cards except for the July 8, 2019, purchase of a $234 ticket in the name of "Jason Key" for travel from Washington, D.C., to New York, on July 8, 2019.

22.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device

---

[5] PSA has advised the government that on October 8, 2019, DAVIS informed PSA that he had a new phone with a new phone number.

does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

23. Based on my training and experience, I know that AT&T can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

24. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

**AUTHORIZATION REQUEST**

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

26. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. The time period for the requested information is March 14, 2019, through October 8, 2019. March 14, 2019, is the day that the GPS device was placed on DAVIS. October 8, 2019, is the day that DAVIS told PSA that he obtained a new phone with a new phone number. I am requesting information for the period from March 14, 2019, through October 8, 2019, so I can compare cell-site data to DAVIS's GPS tracking location. If the cell-site data corresponds to the GPS tracking location, it will help establish that DAVIS possessed the SUBJECT PHONE during the aforementioned timeframe. As previously mentioned, DAVIS' GPS device was removed on July 1, 2019, and reinstalled on July 9, 2019. Cell-site data from this time period may also help establish that DAVIS possessed the SUBJECT PHONE if it reflects travel consistent with the fraudulent Amtrak ticket purchases or locations known to be frequented by DAVIS.

27. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Joshua W. Huckel
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on January 6, 2020

_____
DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE